Laurin H. Mills (DC Bar 428708)
Mansitan Sow (DC Bar 1615853)
Brian C. Clarry (DC Bar 1632831)
Samek | Werther | Mills LLC
2000 Duke Street, Suite 300
Alexandria, VA 22314
Phone : (703) 547-4693
Fax (240) 912-3030
Laurin@samek-law.com
Mansitan@samek-law.com
Brian@samek-law.com

*Attorneys for 11 Defendants*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **In re** | ) | **Case No. 22-00101-ELG** |
| | ) | |
| **819D, LLC,** | ) | **Chapter 11** |
| | ) | |
| Debtor, | ) | |

| | | |
|---|---|---|
| **KARL GARCIA,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **Adv. Pro. No. 22-10009-ELG** |
| v. | ) | |
| | ) | **Hearing Date: October 12, 2022** |
| **THE RUBIN GROUP LLC,** *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## 11 DEFENDANTS NOTICE OF RE-FILING MOTION TO DISMISS

Defendants, The Rubin Group LLC ("TRG"), 819 Capital LLC, K Street Holdings LLC,

TR Holdings LLC, 2233-40th Partners LLC, South Glebe LLC, Woodmore Partners, LLC, TRG

Development LLC, 638 Newton Partners LLC, Michelle Tygier, and Robert Rubin (collectively

the 11 Defendants"), by counsel, and, at the request of the Court, re-files their Motion to Dismiss

and accompanying Memorandum in Support. Exs. A and B. The Motion to Dismiss and accompanying Memorandum in Support were timely filed on June 29, 2022, in the United States District Court for the Eastern District of Virginia, Case No. 1:22-cv-00698-LMB-JFA, which case was transferred to the United States District Court for the District of Columbia as Case No. 1:22-cv-02199-DLF, and thereafter referred to this Court on July 28, 2022.

Dated: September 23, 2022        Respectfully submitted,

                                    *_/s/ Laurin H. Mills_*
                             Laurin H. Mills (DC Bar 428708)
                             Mansitan Sow (DC Bar 1615853)
                             Brian C. Clarry (DC Bar 1632831)
                             Samek | Werther | Mills LLC
                             2000 Duke Street, Suite 300
                             Alexandria, VA 22314
                             Phone : (703) 547-4693
                             Fax (240) 912-3030
                             Laurin@samek-law.com
                             Mansitan@samek-law.com
                             Brian@samek-law.com

                             *Attorneys for 11 Defendants*

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on the 23rd of September, 2022, a true and accurate copy of

the foregoing was served via the Court's CM/ECF system and/or electronic mail to:

Christopher A. Glaser
Jackson & Campbell, P.C.
2300 N Street, N.W., Suite 300
Washington, D.C. 20037-1194
CGlaser@JacksCamp.com
*Attorney for Andrew Rubin*

Bethany Benes, Esq.
Bethune Benes, PLLC
4290 Chain Bridge Road, Suite 302
Fairfax, Virginia 22030
bbenes@bethunebenes.com
*Attorney for Karl Garcia*

John A. C. Keith, Esq.
Ian McElhaney
Blankingship & Keith, PC
4020 University Drive, Suite 300
Fairfax, VA 22030
jkeith@bklawva.com
imcelhaney@bklawva.com
*Counsel for Jeffrey Houle*

Alex Laughlin, Esq.
Jim Miller, Esq.
Odin, Feldman & Pittleman, P.C.
1775 Wiehle Avenue, Suite 400
Reston, Virginia 20190
Alex.Laughlin@ofplaw.com
Jim.Miller@ofplaw.com
*Counsel for Gregory Auger II and Gregory*
*Auger III*

Mark Crawford, Esq.
Law Offices of Mark D. Crawford, PLLC
1005 North Glebe Rd, Suite 210
Arlington, VA 22201
mcrawford@mdc-law.com
*Attorney for 819D LLC*

Douglas E. McKinley, Esq.
P.O. Box 7395
Alexandria VA 22307
demckinley@verizon.net
*Counsel for Thomas Madison*

Milt N. Theologou, Esq.
Silverman Theologou LLP
11200 Rockville Pike, Ste. 520
North Bethesda, MD 20852
mtheologou@silvermanlegal.com

Mark E. Alpert, Esq.
Tracey M. Ohm, Esq.
STINSON LLP
1775 Pennsylvania Ave., N.W., Suite 800
Washington, D.C. 20006
marc.albert@stinson.com
tracey.ohm@stinson.com
*Counsel for Karl Garcia*

Kristen E. Burgers
Stephen E. Leach
Hirschler Fleischer PC
8270 Greensboro Drive, Suite 700
Tysons, VA 22102
sleach@hirschlerlaw.com
kburgers@hirschlerlaw.com
*Counsel for Defendant 819D LLC*

Kristen S. Eustis
Office of the United States Trustee
1725 Duke Street
Ste 650
Alexandria, VA 22314
703-557-7227
Email: Kristen.S.Eustis@usdoj.gov

*Counsel for U. S. Trustee for Region Four*

Sara Kathryn Mayson
DOJ-Ust
1725 Duke Street
Alexandria, VA 22314
202-841-8501
Email: sara.kathryn.mayson@usdoj.gov

*Counsel for U. S. Trustee for Region Four*

_____
*/s/ Laurin H. Mills*
Laurin H. Mills

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

| | |
|---|---|
| **KARL GARCIA,** | |
| Plaintiff, | |
| v. | |
| **THE RUBIN GROUP, LLC,** *et al.* | Case No. 1:22-cv-00698-LMB-JFA |
| Defendants. | |

### THE 11 DEFENDANTS' MOTION TO DISMISS

Defendants, The Rubin Group LLC ("TRG"), 819 Capital LLC, K Street Holdings LLC, TR Holdings LLC, 2233-40th Partners LLC, South Glebe LLC, Woodmore Partners, LLC, TRG Development LLC, 638 Newton Partners LLC, Michelle Tygier, and Robert Rubin (collectively the "11 Defendants") submit this Motion to Dismiss the Third Amended Complaint ("TAC") filed by Karl Garcia ("Mr. Garcia") pursuant to Fed. R. Civ. P. 12(b)(6).  For the reasons set forth in the Memorandum in Support of this Motion to Dismiss, which is filed contemporaneously herewith, this Motion should be granted.

Respectfully submitted,

Dated:  June 29, 2022

*/s/ Laurin H. Mills*
Laurin H. Mills (VSB No. 79848)
Mansitan Sow (VSB No. 94590)
Brian C. Clarry (VSB No. 92160)
Samek, Werther & Mills LLC
2000 Duke Street, Suite 300
Alexandria, VA 22314
(703) 547-4693
Fax (240) 912-3030
Laurin@samek-law.com
Mansitan@samek-law.com
Brian@samek-law.com

*Attorneys for 11 Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 29th day of June, 2022, a true and accurate copy of the

foregoing was served via the Court's CM/ECF system and/or electronic mail to:

Christopher A. Glaser
Jackson & Campbell, P.C.
2300 N Street, N.W., Suite 300
Washington, D.C. 20037-1194
(202) 457-1612
CGlaser@JacksCamp.com
*Attorney for Andrew Rubin*

Bethany Benes, Esq.
Bethune Benes, PLLC
4290 Chain Bridge Road, Suite 302
Fairfax, Virginia 22030
bbenes@bethunebenes.com
*Attorney for Karl Garcia*

John A. C. Keith, Esq.
Blankingship & Keith, PC
4020 University Drive, Suite 300
Fairfax, VA 22030
jkeith@bklawva.com
*Counsel for Jeffrey Houle*

Alex Laughlin, Esq. Jim Miller, Esq.
Alex.laughlin@ofplaw.com
Jim.miller@ofplaw.com
*Counsel for Gregory Auger II and Gregory
Auger III*

Mark Crawford, Esq.
Law Offices of Mark D. Crawford, PLLC
1005 North Glebe Rd, Suite 210
Arlington, VA 22201
mcrawford@mdc-law.com
*Attorney for 819D LLC*

Douglas E. McKinley, Esq.
P.O. Box 7395
Alexandria VA 22307
demckinley@verizon.net
*Counsel for Thomas Madison*

James P. Miller, Esq.
Odin, Feldman & Pittleman, P.C.
1775 Wiehle Avenue, Suite 400
Reston, Virginia 20190
Jim.Miller@ofplaw.com

Milt N. Theologou, Esq.
Silverman Theologou LLP
11200 Rockville Pike, Ste. 520
North Bethesda, MD 20852
mtheologou@silvermanlegal.com

*/s/ Laurin H. Mills*
Laurin H. Mills

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)**

| | |
|---|---|
| **KARL GARCIA,** | |
| Plaintiff, | |
| v. | |
| **THE RUBIN GROUP, LLC,** *et al.* | Case No. 1:22-cv-00698-LMB-JFA |
| Defendants. | |

## <u>ORDER GRANTING THE 11 DEFENDANTS' MOTION TO DISMISS</u>

The Court, having considered the Motion to Dismiss filed by Defendants, The Rubin Group LLC, 819 Capital LLC, K Street Holdings LLC, TR Holdings LLC, 2233-40th Partners LLC, South Glebe LLC, Woodmore Partners, LLC, TRG Development LLC, 638 Newton Partners LLC, Michelle Tygier, and Robert Rubin (collectively the "11 Defendants"), any opposition thereto, and the entire record herein, is of the opinion that said motion is well taken and should be and is GRANTED.

The Third Amended Complaint filed by Plaintiff Karl Garcia is hereby dismissed, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6).

SO ORDERED this _____ day of _____, 2022.

_____
UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

| | |
|---|---|
| **KARL GARCIA,** | |
| Plaintiff, | |
| v. | Case No. 1:22-cv-00698-LMB-JFA |
| **THE RUBIN GROUP, LLC,** *et al.* | |
| Defendants. | |

**THE 11 DEFENDANTS'**
**MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS**

Defendants, The Rubin Group LLC ("TRG"), 819 Capital LLC, K Street Holdings LLC, TR Holdings LLC, 2233-40th Partners LLC, South Glebe LLC, Woodmore Partners, LLC, TRG Development LLC, 638 Newton Partners LLC, Michelle Tygier, and Robert Rubin (collectively the "11 Defendants") submit this Memorandum in Support of their Motion to Dismiss the Third Amended Complaint ("TAC") filed by Karl Garcia ("Mr. Garcia").

**BACKGROUND**

This case arises from the sale of a District of Columbia condominium developed by defendant 819D LLC ("819D") and sold to Mr. Garcia in 2017. In the action before this Court, Mr. Garcia alleges two causes of action against the 11 Defendants:

(1)     Fraudulent Conveyance pursuant to Va. Code § 55.1-400 (Count I); and

(2)     Voluntary Conveyance pursuant to Va. Code § 55.1-401 (Count II)

Both counts concern monetary transfers that purportedly originated from 819D following Mr. Garcia's purchase. For the reasons set forth herein, this action should be dismissed.

## ARGUMENT

### I.        Standard.

This is a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6).  A motion to dismiss tests the sufficiency of a complaint, but it does "not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)).  In considering a motion to dismiss, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff.  *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).  This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth" or are not plausible.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

### II.       Garcia Lacks Standing to Assert Many of His Claims.

Mr. Garcia lacks standing to pursue claims that relate to common elements and/or limited common elements of the condominium.  In both the District of Columbia and Virginia, only condominium associations have standing to assert claims relating to the common elements or the limited common elements of a condominium.  Va. Code § 55.1-1915; D.C. Code § 42-1902.09. "[S]tanding to institute claims or actions concerning common elements, including limited common elements, is restricted to condominium unit owners' associations."  *Kuznicki v. Mason*, 273 Va. 166, 176, 639 S.E.2d 308, 312–13 (2007) (individual unit owner lacks standing to assert claim regarding limited common element); *Malone v. Saxony Co-op. Apartments, Inc.*, 763 A.2d 725, 726 n.1 (D.C. 2000) (Unit owner's "claim is for injuries sustained to the cooperative, and

such a claim can only be brought in the form of an indirect derivative suit on behalf on the cooperative.")

Mr. Garcia has no standing to assert claims relating to either common elements or limited common elements of the condominium. Any purported notification of claims made by Mr. Garcia must be considered only to the extent that same relates to claims which may be asserted by Garcia. Each claim by Mr. Garcia relating to conditions outside the condominium unit that he purchased should be dismissed. E.g., TAC ¶ 33. "On June 1, 2017, Tygier participated in a meeting of the Property's Association. At the meeting, a number of residents voiced their outrage over the Property's defects and lack of repair by Tygier, A. Rubin, 819D, and the Rubin Group."); TAC ¶ 34 ("Mr. Garcia began further investigating the issues with the Property as a whole. On or about August 6, 2017, Mr. Garcia created a "**Common Area Punch List,**" itemizing various issues with the Property's Common Areas. The Common Area Punch List included images and captions, detailing everything from a broken attic window in the Property Mr. Garcia noticed walking down the street, to eroding mortar on the façade's exterior, to missing portions of the Property's brick chimney stack. Three days later, on August 9, 2017, Mr. Garcia submitted the document to Defendant 819D, A. Rubin, and Tygier…").

III.   **Count II Should Be Dismissed Because Garcia Did Not Allege that Any of the 11 Defendants Were Insolvent or Rendered Insolvent at the Time of the Transfers.**

To be liable for a voluntary conveyance, the transfer must be made without valuable consideration and the transferor must either be "insolvent" at the time of the transfer or rendered insolvent when the transfer is made. *In re Meyer*, 244 F.3d 352, 353 (4th Cir. 2001).[1] A debtor

---

[1] Paragraph 240 of the TAC alleges that the transfers were without valuable consideration. That is a conclusion, not an allegation of fact. The TAC, which was filed after a year of discovery, contains no facts supporting the contention that any of the transfers were made without valuable

is insolvent, pursuant to Va. Code § 55.1-401, when it has insufficient property to pay all its debts.  *Hudson v. Hudson*, 249 Va. 335, 340 (1995).  "Debt" is defined as "liability on a claim."  *Commonwealth ex rel. Von Moll v. HKS, Inc.*, 103 Va. Cir. 1, 3, 2019 WL 11866747 (Richmond Apr. 23, 2019); 11 U.S.C. § 101(12).  To "prove insolvency, both the value of the debtor's assets and the amount of his liabilities must be established."  *Hudson*, 249 Va. at 340.  Insolvency is measured on the date of the alleged transfer.  *In re Meyer*, 244 F.3d at 353.[2]

An alleged debt must exist on the date of the alleged transfer.  *Id.*  Garcia's potential judgment resulting from his claim is **not a debt** for purposes of measuring the 11 Defendants' insolvency.  *Cobb v. Overman,* 109 F. 65, 67 (4th Cir. 1901) (discussing payments falling due after the filing of petition, "such claims not being debts absolutely owning at the time of filing."); *Lewis v. Roberts*, 267 U.S. 467, 471 (1925) ("unliquidated claims arising in tort, not previously reduced to judgment" are merely claims, "not being included in the enumeration of provable debts.").  The only references to insolvency in his 249-paragraph TAC are as follows:

> "The transfers referenced above left 819D and alter-egos 819 Capital and the Rubin Group insolvent."  TAC ¶ 232 (which is a conclusion, not an allegation of fact).

> "The [] transfers [] resulted in the insolvency of each of the Defendants. More specifically, Defendants 819 D, The Rubin Group, A. Rubin, Tygier and 819 Capital are each without adequate funds and/or assets to satisfy the anticipated judgment(s) of Mr. Garcia."  TAC ¶ 248.

---

consideration.  The motion to dismiss as to Count II should be granted for the additional reason that Garcia has not pleaded an essential factual element of the claim.

[2] Insolvency is a term with two meanings.  "Balance sheet" insolvency occurs when a company's liabilities exceed its assets; "cash flow" insolvency occurs when a company is unable to meet maturing debts as they come due.  *Matrix Group Ltd., Inc. v. Rawlings Sporting Goods Co.*, 477 F.3d 583, 590 (8th Cir. 2007).  Virginia courts appear to focus exclusively on cash flow insolvency.  Garcia has alleged no facts showing that any of the 11 Defendants were insolvent under either definition on the dates of the alleged transfers.

Garcia does not get to define insolvency for the purposes of Va. Code § 55.1-401. Insolvency is the inability to pay debts as they come due or a situation where an entity's liabilities exceed its assets. The Court has no authority to void the alleged transfers because of Mr. Garcia's bare allegation that his "anticipated judgment" – which is a "claim" and not a "debt" – may not be satisfied. That is not the test for insolvency.

**IV.     The TAC Fails to State a Claim for Fraudulent Conveyance.**

Plaintiff sued the 11 Defendants for fraudulent conveyance only under Virginia law. The issue raised in this motion to dismiss is whether Plaintiff states a claim for fraudulent conveyance under Virginia law. To answer that question, the Court must first conduct a choice-of-law analysis.

"[A] claim for fraudulent conveyance under Virginia law sounds in tort." *Roanoke Cement Co., LLC v. Chesapeake Prods., Inc.*, 2007 WL 2071731 (July 13, 2007) (E.D. Va. 2007); *Terry v. June*, 420 F. Supp. 2d 493, 503 (W.D. Va. 2006) (holding that fraudulent conveyance is a tort for choice-of-law purposes); 37 C.J.S. *FRAUDULENT CONVEYANCES* § 213 ("A cause of action for fraudulent conveyance is a species of tort").

In Virginia, actions sounding in tort are governed by the law of the place of the wrong, which is a principle known as *lex loci delicti*. *McMillan v. McMillan*, 219 Va. 1127, 1128 (1979); *see also Cockrum v. Donald J. Trump for Pres., Inc.*, 365 F. Supp. 3d 652, 666 (E.D. Va. 2019). The place of the wrong is where "the last event necessary to make an [actor] liable for an alleged tort takes place." *Quillen v. International Playtex, Inc.*, 789 F.2d 1041, 1044 (4th Cir. 1986); *Terry*, 420 F. Supp. 2d at 503.

> [T]he last act necessary to complete the tort of fraudulent conveyance is the irrevocable delivery or acceptance of funds by the transferee, not the transferor's order to pay out investor funds. Without a transferee to accept a transfer of funds, in other words, there can be no conveyance and therefore no liability created.

*Terry*, 420 F. Supp. 2d at 503.  For a fraudulent conveyance by wire transfer, the *lex loci delicti* would be the receiver's bank location.  *Id.*  With checks, the last clear act occurs at the location of the bank that honors the check.  *Id.* at 505; Va. Code § 8.4A-104(a).

   To state a claim for fraudulent conveyance under Virginia law, Garcia must allege, *for each challenged transfer*, that the funds received by each transferee were received in Virginia. Virginia's fraudulent conveyance law does not apply to transfers received in other jurisdictions and "a claim for fraudulent conveyance is not a predicate unlawful act from which liability can be spread to others on a theory of civil conspiracy."  *La Bella Dona*, 294 Va. at 257.

   The fraudulent transfer allegations are at ¶¶ 48-231 of the TAC.  Each allegation is that a transfer of a given amount was made by one defendant to another defendant on a given date. The TAC, however, is devoid of allegations establishing the last clear act to complete the alleged tort for any of the transfers.  For example, the TAC does not allege how any of the transfers were made (i.e., cash, check, wire).  Nor does it allege where any wire transfer or check was received. It is noteworthy that Ms. Tygier and Robert Rubin are D.C. residents.  TAC ¶¶ 13-14.  Andrew Rubin lives in Maryland.  TAC ¶ 12.  Defendants 819D, 819D Capital, K Street, TR Holdings, 2233, Woodmore, TRG Development, Canal View and 638 Newton are all companies registered in the District of Columbia and managed by LLC members who live in either D.C. or Maryland. TAC ¶¶ 2-15.  In short, there is no allegation supporting even an inference that any transfers were received in Virginia.

   Vague and conclusory allegations do not state a claim for fraud.  *Ogunde v. Prison Health Services*, 274 Va. 55, 66 (2007).  Plaintiff has sued the 11 Defendants under Virginia's fraudulent conveyance statute and has the burden to allege facts sufficient to establish that Virginia law applies – which means pleading facts sufficient to establish the place of the wrong.

*Dreher v. Budget Rent-A-Car System, Inc.*, 272 Va. 390 (2006) (conducting choice-of-law analysis at demurrer stage and applying New York law).  This he has not done.  The motion to dismiss the fraudulent conveyance count must be granted for failing to allege facts sufficient to state a claim under Virginia law.

## V.      Garcia Did Not Provide Adequate Notice of His Claim Before July 2018.

"The entitlement of one alleging a fraudulent conveyance need not be judicially established or reduced to judgment at the time of the challenged conveyance."  *Buchanan v. Buchanan*, 266 Va. 207, 212 (2003).  Thus, obtaining a judgment against a party is not a prerequisite to establishing creditor status in Virginia (although it is in the District of Columbia).  *Bruce v. Dean*, 149 Va. 39, 46 (1927).  Rather, "[t]he key consideration in establishing creditor status is whether there was actual notice of a specific potential claim."  *Luria v. Bd. of Dir. of Westbriar Condo. Unit Ass'n,* 277 Va. 359, 366 (2009).  A plaintiff cannot demonstrate creditor status of either class before providing actual notice of a specific potential claim to a defendant.  *Id.; see also Bennett v. Garner*, 913 F.3d 436, 442 (4th Cir. 2019); *McCarthy v. Giron*, 2014 WL 2696660, at *13 (E.D. Va. June 6, 2014).

Garcia alleges that he obtained creditor status as of April 22, 2017, when he identified "Punch List Items within his unit in the condominium."  TAC ¶ 30.  Knowledge of punch list items (which are normal in new construction and typically minor) is not actual notice of a specific potential claim of structural defects, the existence of which was not discovered until much later.  *Luria,* 277 Va. at 366-67.  Garcia, like the trial court in *Luria*, is implicitly applying a "should have known" standard erroneously to support his argument that the 11 Defendants had "notice" since April 2017.  *Id.*

Garcia alleges he sent "official notice" via a "litigation hold letter" he sent to on or about July 13, 2018 (the "July Letter").  Assuming *arguendo*, the July Letter constitutes legally sufficient notice of Garcia's potential claims, then July 13, 2018, is the earliest date Garcia obtained creditor status, and against the recipient Defendants only.  Alternatively, absent the legal sufficiency of the July Letter to notify the 11 Defendants of a potential claim, Garcia's May 18, 2020, filing of the D.C. Action is the earliest date Garcia provided actual notice as to the recipient Defendants only.   Accordingly, Garcia fails to state a cause of action regarding the 132 transfers he alleges occurred before July 13, 2018.

Furthermore, the underlying dispute arises from a contract between Garcia and Defendant 819D *only*.  Garcia alleges only one transfer was made after the July Letter, by Defendant 819D in the amount of $44,038.32, on June 14, 2019. TAC ¶ 178.  That transfer is the only transfer for which Garcia could potentially state a claim.  *Luria,* 277 Va. at 366-67.

## VI.     The Alter-Ego Allegations Against Tygier Are Barred by *Res Judicata* and Collateral Estoppel.

*Res judicata* involves both issue and claim preclusion.  *Lee v. Spoden*, 290 Va. 235, 245–46 (2015).  Issue preclusion bars re-litigation of common factual issues between the same or related parties.  *Funny Guy, LLC v. Lecego, LLC*, 293 Va. 135, 142 (2017).  Claim preclusion bars the assertion of legal or equitable rights even if they were not resolved in the earlier litigation.  The doctrine requires litigants to "make the most of their day in court."  *Id.* at 143.

Garcia brought an action in the District of Columbia against 819D, Andrew Rubin, Ms. Tygier, and others, regarding alleged defects in his unit.  D.C. Superior Court Judge Puig-Lugo granted Ms. Tygier's motion to dismiss all claims against her, holding that Garcia did not plead facts to support an alter ego or veil piercing theory of liability.  Exh. A.  Therefore, all alter ego and veil piercing allegations in the TAC against Ms. Tygier, including, but not limited to those

8

contained in paragraphs 2, 6, 231-32, and 240, are barred by *res judicata* and collateral estoppel. *Glasco v. Ballard*, 249 Va. 61, 64 (1995) ("The doctrine applies even when the subsequent proceeding involves a different claim for relief").

## VII. An *In Personam* Judgment Is Not Available Unless and Until Garcia Prevails in the Underlying Arbitration.

Both conveyance statutes contain the same remedy:  A judicial decree declaring the conveyance void as to the transferor's creditors.  *Grayson*, 300 Va. at 49.  "This remedy returns the fraudulently conveyed assets to the transferor, but, as a general rule, it does not authorize 'a court to award an *in personam* judgment when the transaction is set aside.'"  *La Bella Donna*, 294 Va. at 256.  These statutes are subject to a narrow exception that allows a court to enter an *in personam* judgment against the transferee of a fraudulent *cash* transfer.  *Grayson*, 300 Va. at 50-51.  "The exception "unw[inds] the transfer of the cash in the grantee's pockets; it [does] not impose liability upon the grantee by virtue of his participation in the transaction."  *La Bella Dona*, 294 Va. at 257. *In personam* judgment is not available here because Garcia has yet to prevail in his underlying arbitration.

However, "[a] creditor availing himself of [VA Code Ann. § 55.1-402] shall have a *lien* from the time of bringing his action on all the estate, real and personal, and a petitioning creditor shall also be entitled to a lien from the time of filing his petition in the court in which the action is brought." The Court may only set aside a fraudulent or voluntary transfer in an action brought by a creditor to execute on a judgment.  Va. Code § 55.1-404 ("The court may set aside a fraudulent conveyance or voluntary transfer pursuant to §§ 55.1-400 or 55.1-401 during an action brought by a creditor to *execute on a judgment*.").

Garcia is not a judgment creditor.  Thus, the motion to dismiss must be granted to the extent he seeks *in personam* judgments against any Defendant.

Even if the Court had the power to grant *in personam* judgments, "the limit of the transferee's *in personam* liability is limited to the amount of cash allegedly received by the transferee." *La Bella Dona*, 294 Va. at 256-57.  Mr. Garcia requests *in personam* judgments against certain of the Defendants in specific amounts, but for The Rubin Group, 819D LLC, 819 Capital LLC, Mr. Rubin, and Ms. Tygier, Mr. Garcia seeks over $6 million each.  TAC at p. 36-37.  Garcia's potential recovery, however, is limited to the amounts received by these alleged transferees after he provided actual notice of his specific claims.  *Davis v. Bonney*, 89 Va. 755, 761 (1893) ("The statute . . . gives a creditor . . . a lien on the property fraudulently transferred but does not extend the lien to any other estate of the debtor. . . . [W]hen . . . the property has been brought under the control of the court for the benefit of creditors, all the relief has been obtained which is contemplated by the statute.").

## VIII. To the Extent that Virginia's Fraudulent or Voluntary Conveyance Statutes Permit a Claimant Who Has Not Obtained a Judgment Establishing the Debt to Maintain an Action, Those Statutes Are Unconstitutional as Applied.[3]

Garcia has a breach of warranty claim against 819D based on alleged defects in a $1.5 million condominium he purchased on April 28, 2017.  Almost five years later, he has not reduced his claim to a judgment.  But, for the past 18 months, he has relentlessly pursued the 11 Defendants (and now nine additional defendants) for over $6 million even though no one knows whether or how much Garcia will recover in the underlying action.

---

[3] "[W]here constitutional rights are invaded they may be set up by general demurrer or otherwise, at any time." *Hagood v. Commonwealth*, 157 Va. 918, 922 (1932).

Before the advent of modern fraudulent and voluntary conveyance statutes, unsecured and non-judgment creditors were not permitted to bring a fraudulent conveyance action because such a law would have been repugnant to traditional notions of fairness:

> This principle is elementary.  A rule of procedure which allowed any **prowling creditor**, before his claim was definitively established by judgment, and without reference to the character of his demand, to file a bill to discover assets, or to impeach transfers, or interfere with the business affairs of the alleged debtor, **would manifestly be susceptible to the grossest abuse.  A more powerful weapon could not be placed at the disposal of unscrupulous litigants**.

1 Frederick Scott Wait, *A Treatise on Fraudulent Conveyances and Creditors' Bills* § 73 (1884) (emphasis added).  The abuse referenced in the quote above is precisely what has happened in this case during the past year.

Such a rule of procedure is equally repugnant to constitutional notions of fundamental fairness.  In *Grupo Mexicano de Desarrolla S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999) (Scalia, J.), the Supreme Court addressed the issue of whether the equity powers of federal courts, prior to the entry of a money judgment, allowed a federal court to enjoin the defendant from transferring assets to the benefit of preferred creditors.  The Court held, citing the Wait *Treatise*, that the equity jurisdiction of federal courts did not permit such an injunction and was incompatible with basic notions of both procedural and substantive fairness.  *Id.* at 330.  The Court observed that several states had enacted statutes conferring a right on non-judgment creditors to bring a fraudulent conveyance claim.  The Court declined to opine on the constitutional viability of those statutes.  *Id.* at 324 n.7.  This case makes the issue ripe.

While state legislatures enjoy broad latitude to craft laws, that latitude is constrained by the "due process" clauses of the 5th and 14th Amendments.  *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. 272, 276 (1856) ("It is manifest that it was not left to the legislative power to enact any process which might be devised.  The article is a restraint on the legislative as

well as on the executive and judicial powers of the government and cannot be so construed as to leave Congress free to make any process 'due process of law' by its mere will.").

While due process clauses are mainly about procedural protections, it has long been the law that those clauses also have a substantive aspect that concerns the "fundamental fairness" of government activity. *North Carolina Dep't of Revenue v. The Kimberly Rice Kaestner 1992 Family Trust*, 139 S. Ct. 2213, 2219 (2019).

Virginia is one of a small minority of states whose fraudulent conveyance statutes were not derived from the Uniform Fraudulent Transfer Act ("UFTA"). Virginia's fraudulent conveyance statute, as originally enacted, did not permit a "creditor" with a naked claim that had not been reduced to a judgment to maintain a fraudulent conveyance action. To the extent that Virginia's existing fraudulent conveyance statute can be construed to provide a "prowling creditor," such as Garcia, the ability to file suit before obtaining a judgment in his underlying case, that statute is unconstitutional because it is abhorrent to constitutional notions of fairness that predate the founding of this country.

WHEREFORE, the 11 Defendants respectfully request this Honorable Court grant their Motion to Dismiss and to dismiss this present action as to them, together with any further relief deemed just and proper.

Dated:  June 29, 2022                    Respectfully submitted,

                                         _____/s/ Laurin H. Mills_____
                                         Laurin H. Mills (VSB No. 79848)
                                         Mansitan Sow (VSB No. 94590)
                                         Brian C. Clarry (VSB No. 92160)
                                         Samek, Werther & Mills LLC
                                         2000 Duke Street, Suite 300
                                         Alexandria, VA 22314
                                         (703) 547-4693
                                         Fax (240) 912-3030
                                         Laurin@samek-law.com

Mansitan@samek-law.com
Brian@samek-law.com

*Attorneys for 11 Defendants*

## <u>CERTIFICATE OF SERVICE</u>

       I HEREBY CERTIFY that on the 29th day of June, 2022, a true and accurate copy of the foregoing was served via the Court's CM/ECF system and/or electronic mail to:

Christopher A. Glaser
Jackson & Campbell, P.C.
2300 N Street, N.W., Suite 300
Washington, D.C. 20037-1194
(202) 457-1612
CGlaser@JacksCamp.com
*Attorney for Andrew Rubin*

Bethany Benes, Esq.
Bethune Benes, PLLC
4290 Chain Bridge Road, Suite 302
Fairfax, Virginia 22030
bbenes@bethunebenes.com
*Attorney for Karl Garcia*

John A. C. Keith, Esq.
Blankingship & Keith, PC
4020 University Drive, Suite 300
Fairfax, VA 22030
jkeith@bklawva.com
*Counsel for Jeffrey Houle*

Alex Laughlin, Esq. Jim Miller, Esq.
Alex.laughlin@ofplaw.com
Jim.miller@ofplaw.com
*Counsel for Gregory Auger II and Gregory Auger III*

Mark Crawford, Esq.
Law Offices of Mark D. Crawford, PLLC
1005 North Glebe Rd, Suite 210
Arlington, VA 22201
mcrawford@mdc-law.com
*Attorney for 819D LLC*

Douglas E. McKinley, Esq.
P.O. Box 7395
Alexandria VA 22307
demckinley@verizon.net
*Counsel for Thomas Madison*

James P. Miller, Esq.
Odin, Feldman & Pittleman, P.C.
1775 Wiehle Avenue, Suite 400
Reston, Virginia 20190
Jim.Miller@ofplaw.com

Milt N. Theologou, Esq.
Silverman Theologou LLP
11200 Rockville Pike, Ste. 520
North Bethesda, MD 20852
mtheologou@silvermanlegal.com

 

                                */s/ Laurin H. Mills*
                                Laurin H. Mills

# EXHIBIT A

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**Civil Division**

GARCIA, KARL,

                              Plaintiffs,

    v.

819D, LLC et al,

                              Defendant.

Civil Action No. 2020 CA 002540 B

Civil II **-** Calendar 11

Judge Hiram E. Puig-Lugo

## ORDER

This matter is before the Court on Defendant Michelle Tygier's Motion to Dismiss, filed on June 29, 2020 and Defendant Andrew Rubin's Motion to Dismiss, filed on June 30, 2020.  On June 13, 2020, Plaintiff filed an opposition to Defendant Rubin's motion and on July 14, 2020, Plaintiff filed an opposition to Defendant Tygier's motion.  On July 21, 2020, Defendant Tygier filed her reply.

### Background

On May 18, 2020, Plaintiff filed his Complaint against 819D, LLC, Andrew Rubin, Michelle Tygier, Regua, Urban Pace, Potomac Construction Group, and the Sanctuary Condominium Unit Owners Association.  Plaintiff's Complaint asserts that Andrew Rubin was a board member of the homeowner's association governing the Property at issue and also the President of 819D, LLC.  Plaintiff's Complaint asserts that Michelle Tygier was also a board member of the homeowner's association governing the Property at issue and an officer or director of 819D, LLC.  Plaintiff alleges, in relevant part, that he identified defects on the Property and Defendants Tygier and Rubin represented that the defects would be fixed prior to Plaintiff's move-in on the Property.  Plaintiff asserts, in relevant part, that Defendants Rubin and

Tygier had a duty to repair and/or replace any defects in the Unit and failed to do so.  Based on

the allegations in Plaintiff's Complaint, Plaintiff asserts, in relevant part, that Defendants Rubin

and Tygier engaged in a breach of warranty, violation of the Consumer Protection Procedures

Act ("CPPA"), and fraud.

## DISCUSSION

To survive a Motion to Dismiss, a Complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face.  *See Potomac Dev. Corp. v.

District of Columbia*, 28 A.3d 531, 543-44 (D.C. 2011); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79

(2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).  Dismissal of a Complaint for

failure to state a claim upon which relief can be granted should only be awarded if "it appears

beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would

entitle him to relief."  *See* Super. Ct. Civ. R. 12(b)(6); *Fingerhut v. Children's Nat'l Med. Ctr.*,

738 A.2d 799, 803 (D.C. 1999).

 When considering a Motion to Dismiss, a Court must "construe the facts on the face of

the Complaint in the light most favorable to the non-moving party, and accept as true the

allegations in the Complaint."  *Fred Ezra Co. v. Pedas*, 682 A.2d 173, 174 (D.C. 1996).  A Court

should not dismiss a Complaint merely because it "doubts that a Plaintiff will prevail on a

claim."  *See Duncan v. Children's Nat'l Med. Ctr.*, 702 A.2d 207, 210 (D.C. 1997).  However,

the Court need not accept inferences if such inferences are unsupported by the facts set out in the

Complaint.  *See Kowal v. MCI Comm. Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  Nor must

the Court accept legal conclusions cast in the form of factual allegations.  *Id.*

A pleading must contain a "short and plain statement of the claim showing that the

pleading is entitled to relief."  *See* Super. Ct. Civ. R. 8(a); *Ashcroft v. Iqbal*, 556 U.S. 662, 677-

78 (2009).  To survive a Motion to Dismiss under Super. Ct. Civ. R. 12(b)(6), a Plaintiff must

provide "enough facts to state a claim to relief that is plausible on its face."  *See Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible on its face "when the Plaintiff pleads

factual content that allows the Court to draw the reasonable inference that the Defendant is liable

for the misconduct alleged."  *Id.*

## I.   Plaintiff's Breach of Warranty Claim against Defendants Tygier and Rubin

Under D.C. Code § 42.1903.16, "[a] declarant shall warrant against structural defects in

each of the units for 2 years from the date each unit is first conveyed to a bona fide purchaser,

and all of the common elements for 2 years."  The term "declarant" shall mean any person or

group of persons acting in concert who: (A) Offers to dispose of the person's or group's interest

in a condominium unit not previously disposed of; (B) Reserves or succeeds to any special

declarant right; or (C) Applies for registration of the condominium." D.C. Code § 42-

1901.02(11).

It is well established that one seeking to pierce the corporate veil on an alter ego theory

must prove by affirmative evidence the existence of a "unity of ownership and interest" and the

"use of the corporate form to perpetuate fraud or wrong." *Meshel v. Ohev Sholom Talmud Torah*,

869 A.2d 343, 355 (D.C. 2005) (citation omitted). In determining if these elements are met,

Courts "consider a range of factors, including whether corporate formalities have been observed;

whether there has been any commingling of corporate and shareholder funds, staff, and property;

whether a single shareholder dominates the corporation; whether the corporation is adequately

capitalized; and, especially, whether the corporate form has been used to effectuate a fraud." *Id.*

Piercing the corporate veil is a doctrine of equity and the "factor which predominates will vary in

each case…." *Vuitch v. Furr*, 482 A.2d 811, 815 (D.C. 1984). Moreover, determining whether to

pierce the corporate veil is a practical test, "based largely on a reading of particular factual circumstances." *Id.* at 816 (quoting *Valley Finance, Inc. v. United States*, 629 F.2d 162, 172 (D.C. Cir. 1980)). While a plaintiff need not plead "[that which] he needs to show to prevail at trial, the plaintiff must still allege sufficient facts regarding an alter ego relationship to 'satisfy Rule 8(a) and [*Ashcfroft v. Iqbal* (citation omitted)].'" *Kelleher v. Dream Catcher, LLC*, 221 F. Supp. 3d 157, 158-59 (D.D.C. 2016).

Defendant Tygier asserts that Plaintiff's claim must fail because Plaintiff failed to allege or show that Tygier is a "declarant" and therefore, Tygier owed no duty to provide a warranty nor is she alleged to have provided a personal warranty. Defendant Tygier asserts that instead, Plaintiff entered into a Purchase Agreement with 819D, LLC, the developer and owner of the Unit and the Purchase Agreement included 819D, LLC's warranty against structural defects, as well as defects in workmanship and improper materials. Similarly, Defendant Rubin asserts that he is also not a declarant and did not owe a duty to Plaintiff to provide a warranty on the property. Defendant Rubin asserts that Rubin did not hold title to the Property, did not hold any interest in the Property, nor did he offer to dispose of any interest in the Property. Defendant Rubin asserts that he had no obligation to provide any warranty and in fact, did not provide a warranty.

In opposition, Plaintiff asserts that while Rubin and Tygier are not parties to the Purchase Agreement, and while 819D, LLC is the seller, 819D, LLC was established to serve the purpose of the alter ego of Rubin and Tygier. Plaintiff asserts that the Complaint sets forth facts that allege and allow the Court to infer that Rubin and Tygier may be liable as the alter ego of 819D, LLC and cannot shield themselves from personal liability.

Here, the Court finds that Plaintiff's Complaint does not include sufficient factual allegations satisfying Rule 8(a) to support an alter ego or veil piercing theory of liability. Plaintiff's Complaint contains one sentence that states "upon information and belief, 819D was established to serve the purpose of, and is, the alter ego or business conduit of Andrew Rubin and Michelle Tygier conducting business under its name."  The aforementioned allegation is a legal conclusion and Plaintiff's Complaint is devoid of any sufficient factual allegations regarding an alter ego relationship between Rubin, Tygier and 819D, LLC.  Therefore, even viewing the Complaint in a light most favorable to Plaintiff, Plaintiff's Complaint fails to state a claim for breach of warranty against Tygier and Rubin in their individual capacities, as they are not "declarants" under D.C. Code § 42-1901.02(11) and did not owe a duty to Plaintiff to warranty the Unit at issue.  Accordingly, Count I breach of warranty claim against Rubin and Tygier is dismissed.

## II.   Plaintiff's CPPA Claim against Defendants Tygier and Rubin

Under D.C. Code § 28-3904, it is a violation of the D.C. Consumer Protection Procedures Act ("CPPA") for any person to engage in an unfair or deceptive trade practice, whether or not any consumer is in fact misled, deceived, or damaged thereby. The CPPA only supplies consumers with cause of action against merchants selling them goods or services, and therefore there must be consumer-merchant relationship in consumer transaction involving sale of goods or services for act to apply.  *Sundberg v. TTR Realty, LLC*, 109 A.3d 1123, 1129 (D.C. 2015).  A "merchant" under the Act "means a person, whether organized or operating for profit or for a nonprofit purpose, who in the ordinary course of business does or would sell, lease (to), or transfer, either directly or indirectly, consumer goods or services, or a person who in the ordinary

course of business does or would supply the goods or services which are or would be the subject

matter of a trade practice."  D.C. Code § 28-3901.

Defendant Tygier asserts that Plaintiff failed to make any allegations specific to Tygier to

show that Tygier is a "merchant" and does not explain, for example, the legal basis for Plaintiff's

assertion that Tygier had a duty to disclose any information to Plaintiff.  Tygier also asserts that

Plaintiff failed to explain how Tygier can be held personally liable for the acts of 819D, LLC or

the homeowner's association. Similarly, Defendant Rubin asserts that the CPPA does not apply

because Rubin is not a "merchant" for purposes of the CPPA.  Rubin asserts that he did not sell

the property, the deed identifies 819D, LLC as the seller, and Rubin has not acted in the capacity

of a merchant selling any item to Plaintiff.

In opposition, Plaintiff again reiterates that Rubin was the President of 819D, LLC and

therefore, can be held personally liable under the CPPA as a "merchant" because he was

"involved" in the sale and 819D, LLC was an alter ego for Rubin.  Plaintiff asserts that Rubin

made representations in the course of marketing the sale of the Unit to Plaintiff which violates

the CPPA.  Similarly, Plaintiff asserts that Tygier, as an officer of 819D, LLC, can be held

personally liable under the CPPA as a "merchant" because she made representations in the

course of marketing the sale of the Unit to Plaintiff which violates the CPPA.

In reply, Tygier asserts that Plaintiff's citations to a line of cases are not analogous to the

instant case.  Further, Tygier asserts that Plaintiff waived his claims against Tygier.  To support

this assertion, Defendant Tygier includes the Purchase Agreement, referenced in Plaintiff's

Complaint and the document upon which Plaintiff forms much of his Complaint.  The Purchase

Agreement, between Plaintiff and 819D, LLC, contains a provision which waives Plaintiff's

right to assert any and all claims arising out of or relating in any way to any oral or other

representations not contained in the Purchase Agreement. Specifically, the Purchase Agreement states, in relevant part:

> This is the complete agreement between the parties…there are no other oral or other written agreements, representations, conditions, promises, or understandings directly or indirectly connected with this Agreement. Purchaser hereby waives and releases seller, its partners, affiliates, agents, employees, contractors and each of their respective successors and assigns, including, without limitation, any condominium association or other governing body formed in connection with the condominium, from any and all claims, losses, damages, expenses, costs, cause of action or other liabilities whether known or unknown, matured or unmatured, absolute or contingent, arising out of or relating in any way whatsoever to any such oral or other written agreement, representations, conditions, promises, or understandings.

Here, the Court finds that Plaintiff failed to allege facts sufficient to show that Rubin and Tygier are "merchants" subject to the CPPA. Plaintiff's Complaint is void of facts showing that Rubin, Tygier, and Plaintiff had a consumer-merchant relationship in a consumer transaction. Indeed, the seller of the Property was 819D, LLC and the purchaser was Plaintiff. As explained above, Plaintiff failed to show facts sufficient to pierce the corporate veil and does not allege facts of any consumer-merchant relationship or consumer transaction between Rubin and Tygier with Plaintiff. Plaintiff's CPPA claim merely states that Rubin and Tygier had an "obligation" to fully and accurately disclose to the public the characteristics and condition of the Property being offered for sale and they violated their duty by misrepresenting material facts about the Property which misled Plaintiff to purchase the Property. However, as stated in the Purchase Agreement signed by Plaintiff, the Purchase Agreement constituted the entire agreement and any pre-signing representations are not connected to the Purchase Agreement and/or binding. Indeed, the Purchase Agreement states: "there are no other oral or other written agreements, representations, conditions, promises, or understandings directly or indirectly connected with this Agreement" and the Purchase Agreement does not include any obligations on the part of Rubin and Tygier who are not parties to the contract. Therefore, Plaintiff's CPPA claims against Rubin and

Tygier shall be dismissed, as Rubin and Tygier are not "merchants" subject to the CPPA and Plaintiff waived his claims against them when he signed the Purchase Agreement to which Rubin and Tygier are not parties.

## III.   Plaintiff's Fraud Claim against Defendants Tygier and Rubin

In order to make out a claim for Fraud the Plaintiff must show: (1) a false representation in reference to material fact, (2) made with knowledge of its falsity, (3) with the intent to deceive, and (4) action taken in reliance upon the representation. *See Saucier v. Countrywide Home Loans*, 64 A.3d 428, 438 (D.C. 2013). It is well-established that allegations of fraud must be pled with particularity.  *See* Super. Ct. Civ. R. 9(b) (all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity); *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1278 (D.C. Cir. 1994) (pleader must state the time, place and content of the false misrepresentations, the fact misrepresented, and what was retained or given up as a consequence of the fraud). Moreover, where a complaint is filed against multiple defendants, the heightened pleading standard requires that the identity and role of individual defendants alleged to have made false representations be specified in the complaint.  *Phone Recovery Servs., LLC v. Verizon Wash., DC, Inc.*, 191 A.3d 309, 322 (D.C. 2018).

"A corporate officer's tortious conduct, though committed in behalf of the corporation, also creates personal and individual liability on his part." *Bethesda Salvage Co. v. Fireman's Fund Ins. Co.*, 111 A.2d 472 (D.C. 1955).  However, the D.C. Condominium Act specifically relieves condominium developers' agents of tort liability with respect to condominium developments. *Barimany v. Urban Pace LLC*, 73 A.3d 964 (D.C. 2013).  Indeed, under D.C. Code § 42-1903.09, "[a]n action for tort alleging a wrong done: (1) by any agent or employee of the declarant or of the unit owners' association; or (2) in connection with the condition of any

portion of the condominium which the declarant or the association has the responsibility to maintain, **shall be brought against the declarant** or the association, as the case may be."

Defendant Tygier asserts that under D.C. Code § 42-1903, she is shielded from any potential personal liability arising out of statements she allegedly made as an agent or officer of 819D, LLC. Tygier asserts that Plaintiff's Complaint makes clear that the one alleged statement she made to Plaintiff was in the course of her duties as an agent for 819D, LLC. Accordingly, Tygier asserts that to the extend her statements give rise to a tort claim, the proper Defendant is 819D, LLC. Similarly, Defendant Rubin asserts that Plaintiff failed to allege facts to pierce the corporate veil and he cannot be held liable for his statements made as the agent for 819D, LLC. Defendant Rubin asserts that Plaintiff's Complaint makes clear that Plaintiff was aware that his dealings were with the principal 819D, LLC and not Rubin as an individual or agent. Further, Defendant Rubin asserts that even assuming he could be held personally liable, Plaintiff's fraud claim was not pled with the requisite particularity.

In opposition, Plaintiff asserts that Tygier and Rubin are "declarants" under the D.C. Condominium Act and therefore, can be held liable despite the D.C. Condominium Act relieving condominium developers' agents of tort liability with respect to condominium developments. Further, Plaintiff asserts that he alleged with particularity that Rubin and Tygier made several false representations and references paragraphs 11, 14, and 15 in his Complaint to support his assertion.

The Court finds that, as stated and found above, Tygier and Rubin are not "declarants" under D.C. Code § 42-1901.02(11) and therefore, are relieved of tort liability with respect to the Unit development at issue in this case. Further, the Court finds that Plaintiff's fraud claim was not pled with the requisite particularity. Indeed, Paragraph 11 of Plaintiff's Complaint names

five defendants and does not specify the role of the individual defendants alleged to have made

the false representations.  Instead, Plaintiff's Complaint states the Unit was advertised with false

representations and attributes liability to five defendants for the contents of the advertisement

with no particularity or specificity.   Plaintiff's fraud allegations fail to state the time, place and

content of the false misrepresentations, and the fact(s) misrepresented as it pertains to each

respective Defendant against whom Plaintiff is asserting a claim of fraud.  Therefore, Plaintiff

has failed to state a claim of fraud against Rubin and Tygier because as agents of 819D, LLC,

they are relieved from liability under the D.C. Condominium Act and Plaintiff failed to plead his

fraud claim with the requisite particularity.

## CONCLUSION

Based on the above findings, the relevant law, and the entire record herein, it is this 29th day

of July 2020, hereby:

**ORDERED** that Defendant Tygier's Motion to Dismiss is **GRANTED**; it is further

**ORDERED** that Defendant Rubin's Motion to Dismiss is **GRANTED**; it is further

**ORDERED** that Plaintiff's claims against Defendant Tygier and Defendant Rubin are

**DISMISSED**.

**IT IS SO ORDERED**.

Judge Hiram Puig-Lugo
*Signed in Chambers*

Copies via CaseFileXpress to all counsel of record.